

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

**GARY DEAN MILNE #1502537,**
                              **Petitioner,**

**-vs-**                                          **Case No.  A-12-CA-375-SS**

**WILLIAM STEPHENS,**
                              **Respondent.**

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner Gary Dean Milne's Petition for Writ of Habeas Corpus [#1], the Report and Recommendation of the United States Magistrate Judge [#25], Milne's Motion for Extension of Time to File Objections [#27], and Milne's Objections [#28].  Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

All matters in this case were referred to United States Magistrate Judge Andrew W. Austin for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.  Milne is entitled to de novo review of the portions of the Magistrate Judge's report to which he filed specific objections.  28 U.S.C. § 636(b)(1).  All other review is for plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).  Nevertheless, this Court has reviewed the entire file de novo, and agrees with the Magistrate Judge's recommendation.

## Background

### A.    Milne's Criminal History

According to Respondent, the Director has lawful and valid custody of Milne pursuant to a judgment and sentence of the 331st Judicial District Court of Travis County, Texas.  Milne was convicted of tampering with physical evidence, enhanced by two prior felony convictions.  Milne was sentenced to 52 years in prison on January 31, 2008.  His conviction was affirmed on April 23, 2010.  *Milne v. State*, No. 03-08-00113-CR, 2010 WL 1632626 (Tex. App.—Austin 2010, pet. ref'd).  Milne's petition for discretionary review was refused on October 6, 2010.  *Milne v. State*, PD No. 0540-10.

Milne also challenged his conviction in a state application for habeas corpus relief.  The Texas Court of Criminal Appeals denied it without written order on the findings of the trial court without a hearing on April 11, 2012.  *Ex parte Milne*, Appl. No. 77,310-01 at cover.  On April 20, 2012, Milne filed a motion to reconsider his application for writ of habeas corpus.  On May 14, 2012, the Court of Criminal Appeals determined no action would be taken on the motion, finding the motion did not comply with Rule 79.2(d).

### B.    Factual Background

The factual background of this case is found in the Court of Appeals opinion as follows:

> Appellant Gary Dean Milne was charged with tampering with physical evidence, stemming from a traffic stop during which Milne broke free from police long enough to eat a plastic bag that the officers had found in his pocket and that contained what was believed to be methamphetamine.  The trial of the tampering charge was consolidated with the trial for the related charge of possession of a controlled substance.  Both charges were submitted to the jury, which convicted Milne of tampering with evidence but deadlocked on the possession charge.  At the punishment phase, the State called several witnesses to testify about extraneous bad acts and Milne's criminal history, while Milne called several witnesses to testify

-2-

about his good character.  The jury found that Milne had committed two prior offenses as alleged in the indictment and sentenced him to fifty-two years' imprisonment.  Milne filed a motion for new trial, alleging ineffective assistance of counsel.  The trial court held a hearing on the motion and denied the motion.  On appeal, Milne contends that trial counsel was ineffective and that the trial court abused its discretion in overruling his motion for new trial, which argued that he received ineffective assistance of counsel.

*Milne v. State*, No. 03-08-00113-CR, 2010 WL 1632626, at * 1 (Tex. App.—Austin 2010, pet.

ref'd).

On appeal, Milne complained trial counsel failed to conduct a meaningful and thorough

investigation into whether the roadway where he was stopped was under construction at the time of

the traffic stop (which he contended was relevant to whether the stop was legal); interview Milne's

passenger at the time of the traffic stop to inquire about the circumstances of the stop; and contact

and interview several witnesses who Milne claims might have given exculpatory testimony during

the punishment phase.  The Third Court of Appeals summarized the evidence as follows:

> At a hearing on Milne's motion to suppress, Austin Patrol Officer Patricia Bruggeman testified that on the morning that Milne was arrested, she was driving on the southbound I-35 frontage road after just making a U-turn from the northbound lanes under Ben White Boulevard.  After she made her U-turn, she noticed a car about five or six car-lengths in front of her; she testified that Milne was the driver of the car.  She paced Milne's car and observed that it was being driven sixty miles per hour in a fifty-mile-per-hour zone.  She did not know if Milne had just exited the highway or if he had been driving on the frontage road for some distance.  She did not see Milne's brake lights come on until after she turned on her overhead lights to stop him.  Bruggeman also testified that the speed limit on I-35 is usually sixty-five miles per hour but, because of highway construction at the time, the speed limit had been temporarily lowered to fifty-five miles per hour.

> Milne testified at the hearing and said that when he was stopped, he had just exited the highway and was decelerating for a red light in front of him.  He said that as soon as he left the highway, he saw Bruggeman's lights behind him, so quickly that "I felt like maybe the officer had been sitting in her car just waiting with her lights off."  He testified that he thought the highway's speed limit was sixty-five miles per hour at night and seventy during the day, and he said he was not speeding

on the highway and so must have been driving slower than sixty-five miles per hour. He also testified that he never saw a speed limit sign on the frontage road. Milne did not testify at trial.

Defense counsel argued at the hearing that if Milne had just left the highway and was slowing for the red light, "that contradicts what the officer said, but that would certainly match up with him getting off and probably being under the speed limit unless she paced him while he was on 35. In that case, he would be under the speed limit." The trial court asked whether "the Defense challenge is that there was not an offense committed within [Bruggeman's] view," and counsel agreed. The trial court overruled Milne's motion, stating, "[I]t does seem to me from her testimony that there was probable cause to make the stop."

During the guilt/innocence phase of trial, Bruggeman testified that she had made a U-turn onto the southbound I-35 frontage road when she observed Milne's car ahead of her. She paced the vehicle for a short distance, determined that the car was going sixty miles an hour in a fifty-mile-per-hour zone, and turned on her lights to stop the car. During the stop, she discovered that Milne's license had been suspended, and so she handcuffed and arrested him for driving with a suspended license. A male officer who had come to the scene to assist Bruggeman patted down Milne's pockets and found a glass tube used for smoking crack cocaine and a small plastic bag of what appeared to be crystal methamphetamine. Both items were placed on the trunk of Milne's car, and Bruggeman began to walk Milne to her patrol car when Milne turned and started back to his car, dragging Bruggeman and another officer with him. Milne reached the trunk, leaned over, and began to eat the plastic bag. The officers pulled him to the ground and applied pressure points in an unsuccessful attempt to stop him from swallowing the bag and its contents. They then called for an ambulance to make sure Milne did not overdose, and he was transported to a hospital. During an inventory search of Milne's car, the officers found a cylinder containing crystal methamphetamine between the driver's seat and the center console. The jury convicted Milne of tampering with evidence but could not reach a verdict on the possession charge.

During the punishment phase, the jury heard testimony from two women who alleged that they had been sexually assaulted by Milne. The first, Debra Torres, dated Milne for about six months in the late 1990s. She testified that the relationship was violent and mutually abusive and that in 1998 Milne sexually assaulted her after a party. She also testified that the day after the attack, she agreed to go to a concert with him, saying that Milne convinced her that "maybe it was in my imagination." Although Torres reported the attack [to] the police, the charges were later dropped. The second woman, Krystal Evans, testified that in July 2007, Milne and a man named David struck up a conversation with her while she was standing on her apartment balcony. She invited the men into her apartment, where they drank and

smoked marihuana together. During the evening, Milne twice disappeared into Evans's bedroom, and both times she asked David to get Milne out of the room. The second time, David came back and said that he could not get Milne out of the bedroom. Evans went in and saw Milne apparently passed out, but when she approached him, he pulled her onto the bed, ripped off her clothes, and sexually assaulted her. After the men left, she noticed that her jewelry boxes had been emptied. She testified that about a week after the assault, which she reported to the police, Milne appeared at her door; she refused to open the door and called the police.

As defensive witnesses at the punishment phase, Milne's attorney called one of Milne's ex-girlfriends, who testified that he was "an idealist, who steps out of his way to help people," although she admitted that he had made some bad choices, mostly in relation to drinking and drug use. Milne also called his current girlfriend, who testified that he was a good person with a big heart and that he had never made her feel uncomfortable or pressured during their relationship. When she was asked about a 2006 assault report she made to the police, she said she was intoxicated at the time and that the allegations she had made were false. Three other witnesses, Milne's mother, an elderly woman for whom Milne had done some odd jobs, and Milne's cell mate during an earlier incarceration, testified about difficulties Milne had faced in his past and his good character.

During the hearing on Milne's motion for new trial, Milne's trial counsel, Keith Lauerman, testified that Milne raised the issue of whether Bruggeman had probable cause to stop Milne's car. In response, Lauerman investigated the area where the traffic stop took place, "drove the area myself prior to trial and matched that up with the facts that were alleged in the probable cause affidavit," reassuring himself that his observations "seemed compatible with what the officer was saying in the P.C." Lauerman said that he viewed two of the police videos of the stop several times but did not show the videos to Milne. He said, "I went into great detail. I viewed the videos myself about three times, and then I would convey to Mr. Milne what they said. And he expressed at no time that he wanted to see them, although I went into as much detail about them as I could with him." Lauerman said, "He didn't express any interest in seeing them. And the fact was that he was on the scene and in the video, and I believe he recalled what was in the video." Lauerman stated that he watched the two videos that were introduced into evidence but did not watch two other videos, which Lauerman was told by the prosecutor were made by the backup officers who arrived at the scene after the stop had begun. He was asked whether one of the videos not shown to the jury "showed that makeshift exit off of I-35," and he answered, "I'm not aware of that."

Lauerman also testified that he knew Edward Gray was the passenger in Milne's car at the time of the stop but when asked whether Milne had asked that Gray be subpoenaed to testify, said, "I don't recall that he requested [Gray] be

subpoenaed." Lauerman testified that he and Milne had discussed Gray before trial and that he decided not to call Gray as a witness because, as to the validity of the traffic stop, Lauerman did not believe Gray could testify to anything more than what Milne could present himself, and, as to the drugs found in the car, his defensive strategy was to portray Gray as having been in possession of the drugs, which, Lauerman said, "ultimately proved to be somewhat successful because the jury hung up on that issue." Lauerman testified that he had the means to contact Gray but never tried to talk to him, saying, "[I]n light of the way we were going to use Mr. Gray, I didn't think it was prudent to call him." Lauerman also testified that Milne told him that there was construction on I-35 at the time of the stop, which was more than a year before trial. Lauerman did not look into the Department of Transportation's records "because in my driving through that area, the exit ramp was located in the spot that was reflected in the P.C. affidavit, and . . . I did not see evidence of another exit ramp anywhere" in the area.

Id. * 2–4.

### C.    Milne's Grounds for Relief

Milne raises the following grounds for relief:

    1.    He received ineffective assistance of trial counsel when counsel failed to:

        a.    call Edward Gray as a witness at the suppression hearing;

        b.    present Officer Bruggeman's in-car video of the traffic stop at the suppression hearing;

        c.    conduct an adequate pretrial investigation of the case by:

            i.    failing to locate and obtain highway construction records; and

            ii.    failing to investigate the police department's "Uniform Traffic Enforcement Policy;"

        d.    present the "TxDOT construction records" to the jury;

        e.    have Officer Carrillo's in-car video suppressed;

        f.    provide the trial court with the proper legal authority regarding severance of the offenses; and

        g.    object to the jury charge; and

2.   He received ineffective assistance of appellate counsel when counsel failed to:

    a.   raise trial court error; and

    b.   present the construction records at the hearing on the motion for new trial.

**D.   Exhaustion of State Court Remedies**

Respondent contends Milne has not exhausted his state court remedies. Respondent explains Milne references in his federal habeas application his "State Habeas Brief." According to Respondent, Milne failed to timely file his State Habeas Brief, and it was not forwarded to the Texas Court of Criminal Appeals before that court denied the state habeas application on April 11, 2012. Respondent argues this Court's review is limited to the state court record.

<strong>Analysis</strong>

**A.   The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act. *See Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 783–85 (2011). The Court noted the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court noted "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 131 S. Ct. at 784.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* Following all of the Courts of Appeals' decisions on this question, the Court concluded the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Court noted it had previously concluded "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)). When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 785 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the

relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740–41 (quotation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

## B.    Exhaustion

Respondent argues the Court's review of Milne's claims must be based on the record before the state habeas court. As explained by Respondent, Milne cites to his "State Habeas Brief," which contains his Exhibits 1–6. The State Habeas Brief, however, was received by the Travis County District Clerk on April 24, 2012, after Milne's state habeas application had already been denied by the Court of Criminal Appeals. Milne has no right to have untimely material considered. *Wheat v. Johnson*, 238 F.3d 357 (5th Cir. 2001). Milne has not shown "cause" for his procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (applying the cause and prejudice standard to a late

filing of a notice of appeal in state court). In his objections, Milne relies on *Martinez v. Ryan*, 132

S. Ct. 1309 (2012) to argue "cause," but the *Martinez* Court addressed "[t]he precise question" of

"whether ineffective assistance of counsel in an initial-review collateral proceeding on a claim of

ineffective assistance at trial may provide cause for a procedural default in a federal habeas

proceeding." *Id.* at 1315. That question does not apply to Milne's circumstances. Therefore, to the

extent Milne attempts to rely on the documentary evidence in support of his claims that his trial and

appellate attorneys were ineffective in failing to obtain construction or police records, his claims are

unexhausted and procedurally defaulted.

**C.     Ineffective Assistance of Trial Counsel**

In his first ground for relief, Milne argues he was denied effective assistance of trial counsel.

Specifically, Milne complains counsel failed to (1) call Edward Gray as a witness at the suppression

hearing; (2) present Officer Bruggeman's in-car video of the traffic stop at the suppression hearing;

(3) conduct an adequate pretrial investigation of the case by failing to locate and obtain highway

construction records and failing to investigate the police department's "Uniform Traffic Enforcement

Policy"; (4) present the "TxDOT construction records" to the jury; (5) have Officer Carrillo's in-car

video suppressed; (6) provide the trial court with the proper legal authority regarding severance of

the offenses; and (7) object to the jury charge.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth

in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the

defense. This requires showing that counsel's errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make
both showings, it cannot be said that the conviction or death sentence resulted from
a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. In deciding whether counsel's performance was deficient, the Court applies a standard

of objective reasonableness, keeping in mind judicial scrutiny of counsel's performance must be

highly deferential. *Id.* at 686–89. "A fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

*Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." *Id.* (citation omitted). Ultimately, the

focus of inquiry must be on the fundamental fairness of the proceedings whose result is being

challenged. *Id.* at 695–97. Accordingly, in order to prevail on a claim of ineffective assistance of

counsel, a convicted defendant must show (1) counsel's representation fell below an objective

standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. *Id.* at 687.

### 1.      Edward Gray

Milne claims counsel was ineffective in failing to call Edward Gray at the suppression

hearing. Milne explains Gray was a passenger in the car Milne was driving and could have attested

to the fact that Milne "exited the freeway onto the frontage road from a temporary exit for St. Elmo

and Stassney Lane."

The Fifth Circuit has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F.3d 527 (5th Cir. 2009). Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show the testimony would have been favorable to a particular defense. *Id.* (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). Milne has not shown Gray was ready, willing, and able to testify on his behalf at the suppression hearing. In addition, the state appellate court determined there was no indication Gray had anything relevant to add to the existing evidence. *Milne v. State*, No. 03-08-00113-CR, 2010 WL 1632626, *4 (Tex. App.—Austin 2010, pet. ref'd). According to Milne, Gray would simply corroborate Milne's account, but the trial court, which heard Milne's testimony, concluded, based on Officer Bruggeman's testimony, there was probable cause to make the stop. *Id.* at *2. Therefore, Petitioner has not shown prejudice.

### 2. Bruggeman's In-Car Video

Milne next claims trial counsel should have introduced at the suppression hearing Bruggeman's in-car video recording of the stop. Milne maintains counsel told him the video consisted of about 16 seconds of footage showing Bruggeman lighting him up, Milne applying the brakes, and merging to the right-hand lane with his right turn signal engaged. Milne contends this video would have clearly shown his car veering from the makeshift exit with his right turn signal activated and applying the brakes and therefore corroborating his version of the stop. He also adds the video would have contradicted Officer Bruggeman's statement that "his brakes weren't being

-12-

applied at all."

As an initial matter, Milne fails to provide the Court with the video. Therefore, the Court is unable to confirm the description of the video. Moreover, Milne has not actually seen the video and is relying on what his trial counsel told him the video showed. And his trial counsel argued at the suppression hearing that Milne had just exited the highway and was slowing for the red light in contradiction to what Bruggeman claimed. *Milne*, 2010 WL 1632626 at *2. Bruggerman actually never claimed she saw Milne exit the freeway. The trial court was well aware of Milne's contention Bruggeman never viewed an offense committed by Milne but nevertheless concluded there was probable cause for the stop. In sum, Milne fails to show the video would have necessarily been favorable to his defense or altered the outcome of the suppression hearing.

### 3.      Construction Records and APD's Uniform Traffic Enforcement

In two related claims, Milne asserts counsel should have obtained copies of the construction records, which "would have shown that the original St. Elmo Road exit from I-35 South, located at about the 4200 block of the frontage road, was closed at the time of the offense" meaning Milne had to exit using the "makeshift exit" further down at about the 5200 block of the southbound frontage road. Milne believes his exiting at the 5200 block contradicts Officer Bruggeman's testimony where she said she starting pacing Milne at the 4200 block. He contends this evidence should have been presented to the jury.

Milne also believes counsel should have obtained a copy of the Austin Police Department's Traffic Enforcement Policy, which requires officers to "locate the vehicle's radar calibration card to verify the speedometer's accuracy" before pulling over someone for speeding. Milne contends

counsel should have asked Officer Bruggeman to provide her calibration card to substantiate her reason for the stop.

Counsel testified at the motion for new trial hearing he did not look at any construction records "because in my driving through that area, the exit ramp was located in the spot that was reflected in the P.C. affidavit, and I didn't think there was any – I did not see evidence of another exit ramp; anywhere between Ben White and Stassney." VI RR 16. The state courts determined Milne failed to show prejudice. The state appellate court pointed out Bruggeman testified that Milne was on the frontage road, that there were two speed limit signs along that stretch of road, that she paced Milne on the frontage road, and that he was exceeding the posted speed limit. The appellate court noted Milne testified that he had just left the highway and must have been going slower than sixty-five and denied having seen a speed limit sign. However, the court pointed out it is the trial court's role to determine whether the officer or Milne were more credible in their testimony. In addition, the appellate court determined Milne had not presented any evidence to contradict the facts as testified to by Officer Bruggeman.

Milne has not shown the state courts' adjudication of these claims was an unreasonable application of *Strickland*. In addition, Milne fails to show the lack of calibration would have invalidated his traffic stop. As such, he has failed to show prejudice as a result of counsel's decision not to obtain copies of construction records or traffic enforcement policies and present them at either the suppression hearing or to the jury.

### 4.      Officer Carrillo's In-Car Video

Milne next argues counsel should have suppressed Carrillo's in-car video of the stop because it contained statements made by Milne in violation of article 38.22 of the Texas Code of Criminal

Procedure, *Miranda*, and the Fifth Amendment. The record reflects counsel objected to a portion of the video where Officer Carrillo was questioning Milne. III RR 50. The prosecutor noted it appeared as if Milne could be heard to respond with the word "parole" in response to Officer Carrillo's question regarding whether Milne had been arrested before. III RR 51. The trial court noted "it was hard for me to hear any response." III RR 50. Ultimately, the trial court held the audio recording of Officer Carrillo's questions to Milne was admissible while Milne's answers would be protected under *Miranda*. III RR 53. Milne complains the jury had already heard his response when trial counsel objected. Milne argues the jury clearly heard that he was on parole for a previous offense that most likely prejudiced his defense. He concludes he was prejudiced by trial counsel's failure to suppress the entire audio portion of Officer Carrillo's in-car video.

There is no reasonable probability in this case that the audio portion of the video played for the jury prejudiced Milne's defense. Even assuming the video contained an audible statement that Milne was on parole when stopped, the video clearly shows Milne eating a bag of what was believed to be methamphetamine, and at least two witnesses testified they saw Milne eating the bag of suspected methamphetamine, and the strong probability is that it was *this* evidence which caused the jury to convict Milne.

### 5.    Severance of Offenses

Milne next argues counsel failed to provide the trial court with proper legal authority supporting severance of the tampering case from the possession case. The record indicates the State filed its Notice of Consolidation of Offenses for Trial on December 18, 2007, notifying Milne it intended to try the possession case with the tampering case. CR at 37. The trial court held a hearing on December 21, 2007, where trial counsel did not present any law supporting his argument that

-15-

trying the cases together "would be prejudicial."  II SRR 4.

Respondent recognizes Milne had an absolute right to sever his cases pursuant to Texas Penal Code Ann. § 3.04(a).  However, Respondent argues Milne was not harmed by the mistake because the jury deadlocked on the possession charge.

Once again, Milne was shown on video eating a bag of suspected methamphetamine.  That he tampered with the evidence was also supported by the testimony of the police officers.  There is no reason to believe the failure to sever the possession case affected the verdict in the tampering case.  As such, Milne has not shown the requisite prejudice.

6. **Jury Charge**

Milne argues trial counsel was ineffective in failing to object to the jury charge.  Milne asserts the charge failed to include an instruction under article 38.23 of the Texas Code of Criminal Procedure, which prevents the use of evidence seized illegally.  Milne contends such an instruction would have allowed the jury to consider whether his response to Officer Carrillo's questioning was obtained in violation of article 38.22 and *Miranda*, and, if so, would have allowed the exclusion of the prejudicial evidence.

Milne was not entitled to an instruction because the trial court had ordered the audio responses of the Milne suppressed.  In addition, as explained above, whether the jury heard Milne say "parole" in response to one of Officer Carrillo's question had no effect on the jury verdict when the video showed Milne eating the bag of suspected methamphetamine.

7. **Conclusion**

Having independently reviewed the entire state court record, the Court wholly agrees with the Magistrate Judge and finds nothing unreasonable in the state court's application of clearly

-16-

established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Milne's claim he received ineffective assistance of trial counsel. Alternatively, Milne has not shown he was prejudiced by counsel's alleged deficiencies.

**D.      Ineffective Assistance of Appellate Counsel**

Milne also contends he received ineffective assistance of appellate counsel. Specifically, Milne argues counsel was ineffective on appeal by failing to challenge the trial court's error in overruling trial counsel's objection to the admission of Officer Carrillo's in-car video of Carrillo's custodial interrogation of Milne. In addition, he argues appellate counsel was ineffective for failing to present the construction records at the hearing on the motion for new trial.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393–95 (1985); *Strickland*, 466 U.S. at 688; *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland*, 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel).

Appellate counsel was not deficient in failing to challenge the trial court's ruling regarding Officer Carrillo's in-car video. The trial court sustained counsel's objection to the audio portion of the video and suppressed Milne's responses. The fact the jury may have heard Milne's response prior to the objection, is not trial court error. Similarly, appellate counsel was not deficient in failing to present construction records. Even if Milne was right he exited using a "makeshift exit" south of

-17-

where Officer Bruggeman began pacing him, Milne still has not shown the stop was illegal. Accordingly, Milne has not shown prejudice.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Milne's claim he received ineffective assistance of appellate counsel.

### Conclusion

The agrees with Magistrate Judge's Report and Recommendation, and Milne's Petition for Writ of Habeas Corpus [#1] must be DENIED.

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2254 "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   In cases where a district court rejects a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's

underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal of Milne's § 2254 petition on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484)). Thus, a certificate of appealability shall not issue.

Accordingly,

IT IS ORDERED that Milne's Motion for Extension of Time to File Objections [#27] is GRANTED;

IT IS FURTHER ORDERED that Petitioner Gary Dean Milne's Objections [#28] are OVERRULED;

IT IS FURTHER ORDERED that the Report and Recommendation of the United States Magistrate Judge [#25] is ACCEPTED;

IT IS FURTHER ORDERED that Petitioner Gary Dean Milne's Petition for Writ of Habeas Corpus [#1] is DENIED;

IT IS FINALLY ORDERED that a certificate of appealability is DENIED.

SIGNED this the _12_ day of February 2015.


_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE